1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | ELTON CASTILLO,                                  CASE NO. C12-502-MJP-MAT

11 |                              Plaintiff,          ORDER ADOPTING REPORT AND
                                                     RECOMMENDATION WITH
12 |          v.                                      AMENDMENT

13 | ICE FIELD OFFICE DIRECTOR,

14 |                              Defendant.

15

16          This matter comes before the Court on the Report and Recommendation filed by

17  Magistrate Judge Theiler recommending that Petitioner's petition for writ of habeas corpus be

18  granted, Respondent's motion to dismiss be denied, and that Petitioner be granted an

19  individualized bond hearing before an immigration judge. (Dkt. No. 18.) Having reviewed the

20  report and recommendation, the objections filed by Respondent (Dkt. No. 19), and the remaining

21  record, the Court ADOPTS the Report and Recommendation with AMENDMENT, GRANTS

22  Petitioner's petition for writ of habeas corpus, DENIES the Government's motion to dismiss, and

23  ORDERS Respondent to provide petitioner with an individualized bond hearing before an

24  immigration judge within 30 days of the entry of this Order.

**Background**

This case concerns the issue of whether the mandatory detention statute, INA § 236(c), applies to aliens who have been taken into immigration custody several months or years after being released from state custody. Other district court judges in this district have consistently held that it does not. <u>See, e.g.</u>, <u>Quezada-Bucio v. Ridge</u>, 317 F. Supp. 2d 1221, 1228 (W.D. Wash. 2004); <u>Pastor-Camarena v. Smith</u>, 977 F. Supp. 1415 (W.D. Wash. 1997). However, the Government asks the Court to follow the Fourth Circuit's recent decision in <u>Hosh v. Lucero</u> reaching the opposite conclusion. 680 F.3d 375 (4th Cir. 2012).

Petitioner Elston Castillo is a native and citizen of Belize who first came to the United States in 1977, when he was about 9 years old. (AR L719.) In 1983, Castillo adjusted to lawful permanent resident status. (<u>Id.</u>) Petitioner's mother, Henrietta Ovado, became a U.S. citizen in 1991. (AR L688.) Castillo attended elementary school, junior high school, and high school in Southern California, and from 1992-1994 attended the National Technical College in Los Angeles, where he obtained a certificate for computer aided drafting. (AR L719.)

On Oct. 23, 1997, Petitioner pled guilty in superior court in Pierce County, Washington, to one count of unlawful use of a fortified building in order to deliver controlled substances. (AR L12.) He was sentenced to twenty-four months of community supervision. (<u>Id.</u>) On Sept. 6, 2001, Petitioner was convicted in U.S. District Court for the Northern District of Indiana for the offense of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), and sentenced to twenty-seven months of imprisonment. (AR L24-25.) Petitioner was placed in removal proceedings, and was removed to Belize on Feb. 18, 2003. (Dkt. No. 18 at 2.)

In 2004, Petitioner reentered the United States by crossing the border near San Ysidro, California, without inspection. (AR 719.) ICE agents noticed Petitioner in April 2009, when he

applied for a U.S. passport in the name of Elston Avado, his mother's surname. (Dkt. No. 18 at 2.) On July 23, Petitioner was indicted in the U.S. District Court for the District of Alaska of two counts of False Statement in United States Passport Application in violation of 18 U.S.C. § 1542. (Id.) On Nov. 16, 2010, Petitioner was apprehended in Washington State and taken into custody on the outstanding warrant. (AR R322.) He was convicted of those charges on June 9, 2011, and sentenced to time served and three years supervised probation. (Id.)

Four days later, on June 13, 2011, ICE issued Petitioner a Notice of Intent/Decision to Reinstate Prior Order, informing Petitioner that pursuant to INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), he was "removable as an alien who has illegally reentered the United States having been previously removed . . . while under an order of exclusion, deportation or removal and [] therefore subject to removal by reinstatement of the prior order." (Dkt. No. 18 at 3.) Petitioner was transferred to the Northwest Detention Center in Tacoma, Washington. (Id.)

On Oct. 14, 2011, an asylum officer interviewed Petitioner after he expressed a fear of returning to Belize. (AR L719.) Petitioner told the asylum officer he feared he would be harmed on account of his Rastafarian religious beliefs and because he is a criminal deportee. (Id.) According to the officer, Petitioner credibly testified that Belizean police repeatedly beat him and made death threats against him between February 2003 and May 2004. (AR L717.) The officer found Petitioner "demonstrated that he has been subject to torture in the past because police beat him repeatedly on numerous occasions, choked him once, and shot at him." (Id.) The officer found "[t]he torture inflicted on the applicant in the past demonstrates that the torturer he fears has a specific intent to inflict harm on him that meets the definition of torture." (Id.)

Based on this credible testimony and on various country conditions reports, the asylum officer determined that Petitioner had established a reasonable fear of persecution and torture if

1   he were to return to Belize, and referred his case to an immigration judge to determine whether

2   he is entitled to withholding of removal. (AR L717-20.) Specifically, the asylum officer found

3   that "[a] preponderance of the evidence does establish that there is a reasonable possibility that

4   the applicant would face intentionally inflicted cruel or inhuman treatment amounting to torture

5   not occurring as a result of lawful sanctions from the Belizean police while he is in their custody

6   or control if he were to return to Belize." (AR 717.)

7          On April 3, 2012, Petitioner filed the instant habeas petition, challenging the lawfulness

8   of his continued detention and seeking either supervised release or a bond hearing. (Dkt. No. 18

9   at 3.) Respondent has filed a motion to dismiss, arguing that the petition should be denied

10  because Petitioner is subject to mandatory detention under INA § 236(c), 8 U.S.C. §1226(c).

11  (Id.) Alternatively, Respondent contends that Petitioner is lawfully detained under INA § 236(a),

12  8 U.S.C. § 1226(a), pending a determination on whether he is to be removed. (Id.) A hearing was

13  scheduled before an immigration judge for June 26, 2012, but the present record does not

14  indicate if that hearing was ever held. (Id.)

15         In her Report and Recommendation, Magistrate Judge Theiler recommended granting

16  Petitioner's habeas petition and ordering that an individualized bond hearing occur within thirty

17  days. (Dkt. No. 18 at 8.) Magistrate Judge Theiler concluded that Petitioner is not subject to

18  mandatory detention under INA § 236(c), because Petitioner was not taken into immigration

19  custody on the underlying offense at the time he has apprehended in 2011. (Id. at 7.) Therefore,

20  she concluded, Petitioner's detention is governed by INA § 236(a), which authorizes the

21  immigration judge to release him on bond or conditional parole if he is neither a flight risk nor a

22  danger to the community. (Id. at 7-8.)

23

24

1    The Government objects on two grounds. First, it argues that the text of INA § 236(c)—

2 which says ICE must take into custody "any alien who . . . is deportable for having committed . .

3 . any offense covered in section . . . 237(a)(2)(C) . . *when the alien is released* (emphasis

4 added)"—is ambiguous, and does not clearly mean that mandatory detention applies only to

5 those aliens taken into immigration custody immediately after their release from custody. (Dkt.

6 No. 19 at 3.) Because the language is ambiguous, Respondent argues, the Court should afford

7 deference to the interpretation of the Board of Immigration Appeals, and hold that mandatory

8 detention applies to Petitioner. (Id. at 3-7.)

9    Second, Respondent objects that Magistrate Judge Theiler never addressed its argument

10 that Petitioner's continued detention is lawful pursuant to INA § 236(a) and 8 C.F.R. §§ 241.8

11 and 241.4(c). (Dkt. No. 19 at 7-9.) Respondent asserts these provisions permit the district

12 director or the director of detention and removal to exercise discretion, and asserts that Petitioner

13 therefore has received all the benefits of due process that he is entitled to. (Id. at 9.)

14                                         **Discussion**

15    A.  Mandatory Detention

16    Petitioner is not subject to mandatory detention under INA § 236(c), because that section

17 only requires mandatory detention "when the alien is released" from incarceration on the

18 underlying offense. The text of the INA is clear: "The Attorney General shall take into custody

19 any alien who . . . is deportable by reason of having committed any offense covered . . . when the

20 alien is released, without regard to whether the alien is released on parole, supervised release, or

21 probation, and without regard to whether the alien may be arrested or imprisoned again for the

22 same offense." INA § 236(c), 8 U.S.C. § 1226(c). Interpreting this statutory language, this Court

23 has repeatedly held that Congress intended mandatory detention to apply only to those aliens

24 taken into immigration custody immediately after their release from state custody. See, e.g.,

1   Quezada-Bucio v. Ridge, 317 F. Supp. 2d. 1221, 1228 (W.D. Wash. 2004) (holding that "the

2   mandatory detention statute, INA § 236(c), does not apply to aliens who have been taken into

3   immigration custody several months or years after they have been released from state custody");

4   Pastor-Camarena v. Smith, 977 F. Supp. 1415, 1417 (W.D. Wash. 1997) (holding that the plain

5   meaning of the statute indicates that INA § 236(c) applies to aliens immediately after release

6   from custody, and not to aliens released many years earlier).

7          Petitioner is deportable because of his 2001 firearms conviction, for which he was

8   released in 2002. (Dkt. No. 18 at 7); INA § 101(a)(43)(E)(ii), 8 U.S.C. § 1101(a)(43)(E)(ii).

9   Pursuant to INA § 236(c), the Attorney General was therefore authorized in 2002 to take

10  Petitioner into mandatory detention, because that was "when the alien [was] released." Id. This

11  statutory language does not provide Respondent a license to hold Petitioner in mandatory

12  detention when he was apprehended nearly a decade after this release. Respondent objects that

13  "this conclusion would deprive ICE the opportunity to mandatorily detain an alien even if the

14  reason for the delay was due to the alien's own illegal behavior." (Dkt. No. 19 at 6.) But the

15  statute contains no exception for a delay caused by an alien's behavior. Even if it did,

16  Respondent does not show Petitioner's behavior was the reason for much of this delay. For

17  example, Respondent fails to show that Petitioner was taken into immigration custody on the

18  underlying offense at the time he was apprehended in 2010 or even when he was transferred to

19  Alaska on federal charges in 2011. (AR R322.)

20         Respondent's argument that the Court should adopt the Fourth Circuit's recent holding in

21  Hosh v. Lucero is unpersuasive. 680 F. 3d 375 (4th Cir. 2012). In Hosh, the Fourth Circuit

22  looked beyond the immigration context to Supreme Court cases involving internal requirements

23  of customs laws and the Bail Report Act of 1984, 18 U.S.C. § 3142(f), to find that "if a statute

24

1   does not specify a consequence for noncompliance with statutory timing provisions, the federal

2   courts will not in the ordinary course impose their own coercive sanction." Hosh, 680 F.3d at

3   381 (quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 63 (1993) and citing

4   United States v. Montalvo-Murillo, 495 U.S. 711, 713-14 (1990)). In those cases, the Supreme

5   Court declined to order a prisoner automatically released for a procedural violation of the bail

6   statute and declined to automatically dismiss a customs forfeiture action because a government

7   officer missed a deadline. Montalvo-Murillo, 495 U.S. at 716-17; James Daniel Good Real Prop.,

8   510 U.S. at 65.

9          But this case is about providing due process to an individual, not taking away a benefit

10  afforded the government. As the Hosh court acknowledged, even if this Court finds that § 236(c)

11  is not applicable, "the Government would retain the ability to detain criminal aliens after a bond

12  hearing." 680 F.3d at 382. While the Ninth Circuit has held that "a sister circuit's reasoned

13  decision deserves great weight and precedential value," it has also explained that "our primary

14  duty must always be to apply the law as we understand Congress to have written it." Foley-

15  Wismer & Becker v. NLRB, 682 F.2d 770, 775 (9th Cir. 1982).

16         The Court need not defer to the BIA's interpretation of § 236(c) as requiring mandatory

17  detention, because the language of the statute is not ambiguous. Chevron U.S.A., Inc. v. Natural

18  Res. Def. Council, Inc., 467 U.S. 837, 844 (1984). Chevron sets forth a two-step analysis. First,

19  the reviewing court considers "whether Congress has directly spoken to the precise question at

20  issue." 467 U.S. at 842. If the court answers this threshold question in the affirmative, "that is the

21  end of the matter; for the court, as well as the agency, must give effect to the unambiguously

22  expressed intent of Congress." Id. at 842-43. Only if the statutory language is ambiguous should

23  a court defer to the agency's reasonable construction. Id. at 843.

24

1    In conducting a <u>Chevron</u> analysis, the Court is to employ traditional tools of statutory

2    construction. <u>See</u> <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 446 (1987). The primary canon is that

3    "courts must presume that a legislature says in a statute what it means and means in a statute

4    what it says there." <u>Connecticut Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992). Statutory

5    language is also to be construed in harmony with related provisions and the statute as a whole.

6    <u>See</u> <u>K Mart Corp. v. Cartier, Inc.</u>, 486 U.S. 281, 291 (1988). Analyzing the precise language at

7    issue here, multiple judges in this district have concluded that the clear language of the statute

8    indicates that the mandatory detention of aliens "when" they are released requires that they be

9    detained at the time of release. <u>Quezada-Bucio</u>, 317 F. Supp. 2d at 1224 (W.D. Wash. 2004)

10   (Lasnik, J.); <u>Pastor-Camarena</u>, 977 F. Supp. 1415 (W.D. Wash. 1997) (Dwyer, J.). "[I]f Congress

11   had intended for mandatory detention to apply to aliens at any time after they were released, it

12   easily could have used the language 'after the alien is released,' 'regardless of when the alien is

13   released,' or other words to that effect." <u>Quezada-Bucio</u>, 317 F. Supp. 2d at 1230.

14   Analyzing the same statutory provision, the First Circuit has held that the structure of

15   INA § 236(c) supports reading "when released" to refer to release from the underlying offense.

16   <u>Saysana v. Gillen</u>, 590 F.3d 7, 14 (1st Cir. 2009) (citations omitted). "The 'when released'

17   provision immediately follows the list of enumerated offenses, indicating that the former

18   modifies the latter." <u>Id.</u> "Because the entire section speaks of certain qualifying offenses, it is

19   only natural to read the 'when the alien is released' clause to mean 'when the alien is released

20   from custody arising from the qualifying offense.'" <u>Garcia v. Shanahan</u>, 615 F. Supp. 2d 175,

21   183 (S.D.N.Y. 2009) (citations omitted).  Although those cases considered the issue of which

22   offense the alien was being released from custody from, the analysis of § 236(c) is equally

23   applicable here.

24

ORDER ADOPTING REPORT AND
RECOMMENDATION WITH AMENDMENT- 8

1        Lastly, the Court's adoption of the plain meaning interpretation of the words "when

2   released" is supported by the immigration rule of lenity. In the context of construing an

3   immigration statute, the Supreme Court has explained, "since the stakes are considerable for the

4   individual, we will not assume that Congress meant to trench on his freedom beyond that which

5   is required by the narrowest of several possible meanings of the words used." Fong Haw Tan v.

6   Phelan, 333 U.S. 6, 10 (1948). The rule of lenity is especially applicable in this case, because,

7   while "[d]eportation is always a harsh measure; it is all the more replete with danger when the

8   alien makes a claim that he or she will be subject to death or persecution if forced to return to his

9   or her home country." Cardoza-Fonseca, 480 U.S. 421, 449 (1987). That is precisely the case

10   here. Because the "when released" language in INA § 236(c) is not ambiguous, the Court need

11   not defer to the BIA. Chevron, 467 U.S. at 843. Petitioner is not subject to mandatory detention

12   under § 236(c), because he was not placed in immigration detention "when released" from his

13   underlying offense.

14        The Court makes one AMENDMENT to the Report and Recommendation. In her

15   description of the timeline of Petitioner's offenses, Magistrate Judge Theiler stated: "Petitioner

16   was released from federal custody on [the 2001 firearms] charge in 2002, prior to his 2003

17   removal from the United States." (Dkt. No. 18 at 7.) A review of the record indicates that

18   Petitioner was not released at that time, but was transferred directly from prison to ICE custody,

19   then deported to Belize. (AR R422, L311.) However, because the words "when released" are not

20   ambiguous, the fact that Petitioner was not released before being deported in 2003 has no bearing

21   on whether Petitioner was subject to mandatory detention when he was rearrested in 2011. The

22   only issue is whether the offense Petitioner committed in 2011 is covered by the mandatory

23   detention statute. 8 U.S.C. § 1226(c). Respondent does not assert that it is. (Dkt. No. 19 at 6.)

24

ORDER ADOPTING REPORT AND
RECOMMENDATION WITH AMENDMENT- 9

1   The Court AMENDS the Report and Recommendation to correct this error, but its conclusions

2   are unaffected.

3       B.  Regulatory Framework

4       Respondent next objects that, even if Petitioner is not subject to mandatory detention

5   under § 236(c), he is lawfully detained under § 236(a), and his custody status is governed by

6   INA §241. (Dkt. No. 19 at 7.) This conclusion is not supported by the INA and the related

7   regulatory framework. In fact, the regulatory provision Respondent cites supports the opposite

8   conclusion from the one Respondent urges.

9       Respondent agrees with the Report and Recommendation that because Petitioner's

10  application for withholding of removal is pending, he is currently not subject to a final reinstated

11  order of removal. (Dkt. No. 19 at 9; Dkt. No. 18 at 6-7.) Therefore, Petitioner's detention is

12  governed by INA § 236, which covers detention pending decisions on whether an alien is to be

13  removed. 8 U.S.C. § 1226.

14      Respondent's argument that § 241 governs Petitioner's custody status—even though he is

15  detained under § 236—defies both logic and the clear text of the statute. The titles of the

16  respective sections are telling. Section 236 governs "Apprehension and detentions of aliens,"

17  while § 241 governs "Detention and removal of aliens ordered removed." 8 U.S.C. §§ 1226,

18  1231. The part of § 241 that Respondent cites, § 241(a)(6), covers "An alien ordered removed." 8

19  U.S.C. § 1231(a)(6). But Respondent agrees that Petitioner's removal order is "non-final," so it

20  is unclear why his custody would be governed by the section of the INA that governs "aliens

21  ordered removed." (Dkt. No. 19 at 8); 8 U.S.C. § 1231.

22      Lastly, Respondent argues that 8 C.F.R. § 241.8(e) creates an explicit regulatory

23  framework governing aliens, like Petitioner, who have been ordered removed subject to

24  reinstatement of removal, but who have requested asylum and are awaiting the outcome of

ORDER ADOPTING REPORT AND
RECOMMENDATION WITH AMENDMENT- 10

1  withholding only proceedings. (Dkt. No. 19 at 8-9.) According to Respondent, these regulations

2  give district directors and ICE field offices the discretion to make custody determinations for the

3  three-month period following the expiration of the 90-day removal period. (Id. at 9 (citing 8

4  C.F.R. § 241.4(c).) But a reading of the whole of 8 C.F.R. § 241.8 shows that paragraph (e)

5  actually creates an exception for aliens seeking withholding of removal. 8 C.F.R. § 241.8(e)

6  (titled "Exception for withholding of removal"). While execution of reinstated orders of removal

7  is governed by §241, custody of aliens awaiting withholding of removal proceedings is explicitly

8  not governed by § 241. 8 C.F.R. § 241.8. This fits within the logical framework of the INA,

9  because it makes little sense to discuss a "90-day removal period," when Respondent agrees that

10  Petitioner's removal order is "non-final." (Dkt. No. 19 at 8-9.)

11  <center>**Conclusion**</center>

12      Petitioner is entitled to an individualized bond hearing before an immigration judge

13  pursuant to the general release terms of INA § 236(a). The Court ADOPTS the Report and

14  Recommendation with AMENDMENT, GRANTS Petitioner's petition for writ of habeas corpus,

15  DENIES the Government's motion to dismiss, and ORDERS Respondent to provide petitioner

16  with an individualized bond hearing before an immigration judge within 30 days of the entry of

17  this Order.

18      The clerk is ordered to provide copies of this order to all counsel.

19      Dated this 14th day of November, 2012.

20

21

22                   Marsha J. Pechman

23                   United States District Judge

24